# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JACQUELINE NOTTINGHAM,<br><br>*Plaintiff*,<br><br>v.<br><br>HOUSTON HOSPITALS, INC.; JACK L. DANIEL, INC.; FRIER & OULSNAM P.C.,<br><br>*Defendants*. | CIVIL ACTION NO.<br>5:18-cv-00182-TES |

## ORDER ON MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Before the Court are two Motions to Dismiss for Failure to State a Claim filed by Defendants Houston Hospitals, Inc. ("Houston") and Jack L. Daniel, Inc. ("Daniel"). For the reasons stated below, the Court **GRANTS** Defendant Houston's Motion to Dismiss for Failure to State a Claim [Doc. 17] and **GRANTS in part** and **DENIES in part** Defendant Jack L. Daniel's Motion [Doc. 20].

### Standard of Review for Rule 12(b)(6) Motions

When reviewing a Rule 12(b)(6) motion, the Court views the facts and allegations in the light most favorable to Plaintiff and draws all reasonable inferences in Plaintiff's favor. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999). So viewed, Plaintiff must allege facts—not mere legal conclusions—that state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff alleges a plausible claim for relief when they

"plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If Plaintiff fails to allege facts that state a plausible claim for relief, then the Court should dismiss Plaintiff's claim. *Id.*

**Factual Background**

On December 17, 2015, Plaintiff sought treatment at Defendant Houston's medical facility. [Doc. 15, at ¶ 33]. During this visit, Plaintiff incurred a valid debt that she defaulted on in March 2017. [*Id.* at ¶ 35]. After Plaintiff defaulted, Houston sold the debt to Defendant Jack L. Daniel who hired Defendant Frier Oulsnam P.C. ("Frier") to collect the debt. [*Id.* at ¶ 37]. Frier filed an action to collect the debt on June 22, 2015, but identified Houston as the plaintiff and owner of the debt in its suit. [*Id.* at ¶ 39-40].

During a hearing on November 7, 2017, Plaintiff argued that Houston was not the owner of the debt as Houston had sold it to Daniel. [*Id.* at ¶ 53]. However, Houston refused to withdraw the claim and offered an employee to testify that it still owned the debt. [*Id.* at ¶¶ 44, 46-47]. Houston, through Frier, maintained that Daniel transferred the debt back to Houston prior to the commencement of the action. [*Id.* at ¶ 55]. In response to this dispute, the court suspended the hearing to permit Houston to provide evidence that it owned the debt. [*Id.* at ¶ 56]. Daniel transferred the debt back to Houston on December 7, 2017 and Defendants continue to maintain the collection action. [*Id.* at ¶¶ 57, 59].

Plaintiff initiated this action in May 2018, alleging that Defendants Daniel and Frier violated the Fair Debt Collection Practices Act 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") by "misleading the Magistrate Court and the Plaintiff as to the actual owner of the [d]ebt" and by "refusing to dismiss the Suit and continuing to litigate despite the knowledge that Defendant Hospital did not own the Debt." [*Id.* at ¶72(i)-(ii)]. Plaintiff asserts that this conduct was harassment or abuse in violation of § 1692d; false or misleading representations in violation of § 1692e; and an unfair practice in violation of § 1692f. [*Id.*]. Plaintiff also asserts claims against all of the Defendants for violations of the Georgia Fair Business Practices Act Ga. Code Ann. §§ 10-1-390 *et seq.* ("GFBPA"). With respect to Daniel and Frier, Plaintiff argues that they are liable under the GFBPA because a violation of the FDCPA is a violation of the GFBPA. Plaintiff also maintains that all of the Defendants are liable because their efforts to conceal the identity of the owner of the debt and to collect the debt were deceptive and unfair. [*Id.* at ¶¶ 78-82].

## Discussion

I. <u>Houston Hospital's Motion to Dismiss</u>

Houston argues in its Motion to Dismiss for Failure to State a Claim [Doc. 17] that Plaintiff's claims should be dismissed because she has not sufficiently alleged a violation of the GFBPA. Specifically, Houston argues that Plaintiff failed to allege facts that would bring their transaction within the scope of the GFBPA or that Plaintiff relied in any way

3

on Houston's allegedly deceitful conduct. [Doc. 18, at 3 & 6]. As discussed below, the Court agrees with Houston on both fronts.

"The threshold question is whether the underlying transaction…falls within the scope of the [G]FBPA." *Zeeman v. Black*, 273 S.E.2d 910, 913 (Ga. Ct. App. 1980). A transaction falls within the scope of the GFBPA if it is a consumer transaction and "[t]he alleged offensive activity [took place] 'in the conduct of consumer acts or practices, i. e., within the context of the consumer marketplace." *Zeeman*, 273 S.E.2d at 913 (quoting *State v. Meredith Chevrolet*, 244 S.E.2d 15 (Ga. Ct. App. 1978) (internal quotations and punctuation omitted)). Therefore, at this stage of the proceeding, Plaintiff must allege that the underlying transaction was a consumer transaction and that the alleged deceit occurred in the context of the consumer marketplace. If Plaintiff alleges these things, then the "threshold question" of whether the GFBPA applies would be resolved in her favor for purposes of this motion, and the Court would then consider whether Plaintiff has stated a prima facie GFBPA claim.

The GFBPA defines a consumer transaction as "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." Ga. Code Ann. § 10-1-392(a)(10); *see also Henderson v. Gandy*, 623 S.E.2d 465, 467 (Ga. 2005) (discussing who can bring GFBPA claim). Because the underlying transaction—Plaintiff's treatment at Houston's facility—involved the provision of personal services, the Court finds that Plaintiff pled sufficient facts to

4

support the conclusion that the underlying transaction was a consumer transaction. Thus, the next question is whether the alleged deceptive act had an impact on the consumer marketplace or was instead "essentially private." *See Waller v. Scheer*, 332 S.E.2d 293, 296 (Ga. Ct. App. 1985) (recognizing that "essentially private" transaction did not impact consumer marketplace in a way that gave rise to GFBPA claim). Based on the current allegations, the Court must conclude that the alleged deceptive act occurred in the context of an essentially private transaction and did not impact the consumer marketplace.

Georgia courts have created a two-prong test to determine whether the claim satisfies the GFBPA's marketplace-impact requirement. Applying this test, courts consider "(a) the medium through which the act or practice is introduced into the stream of commerce; and (b) the market on which the act or practice is reasonably intended to impact." *Benchmark Carpet Mills, Inc. v. Fiber Indus., Inc.*, 311 S.E.2d 216, 218 (Ga. Ct. App. 1983). Plaintiff addressed this framework in her response to the subject motion, but did not specifically apply these factors to the facts as alleged. [Doc. 22, at 4]. Instead, Plaintiff summarily concluded that "there was a consumer transaction between Plaintiff and [Houston] sufficient to give rise to liability under the GFBPA and [Houston's] actions affect the consumer marketplace by misrepresenting the actual owner of alleged debts." [*Id.*]. Despite clear direction from Georgia courts on how to apply this test, Plaintiff made no effort to identify which medium Houston used to introduce its alleged deception into the stream of commerce or the market that the alleged deception impacted. As pled, this

claim appears to be no more than an isolated instance of deceit in a single transaction – exactly what Georgia courts have frequently held insufficient to give rise to a GFBPA claim. *See, e.g.*, *Pryor v. CCEC, Inc.*, 571 S.E.2d 454, 455-56 (Ga. Ct. App. 2002); *Davis v. Rich's Dep't Stores, Inc.*, 545 S.E.2d 661, 664 (Ga. Ct. App. 2001); *Lynas v. Williams*, 454 S.E.2d 570, 573 (Ga. Ct. App. 1995).

Even if the Court found this transaction within the scope of the GFBPA, Plaintiff has not alleged the elements of a GFBPA claim: (1) a violation of the GFBPA; (2) causation; and (3) injury. *Zeeman*, 273 S.E.2d at 916. At this stage of the proceedings, Plaintiff need only make plausible allegations as to each of these elements to survive the subject motion. *Ashcroft*, 556 U.S. at 678. Despite this deferential standard, Plaintiff failed to allege sufficient facts to survive Houston's motion because Plaintiff did not allege that she relied on the Defendants' misrepresentations. In *Chancellor v. Gateway Lincoln-Mercury, Inc.*, the Georgia Court of Appeals explained that a plaintiff did not have a claim under the GFBPA where they "were not induced to enter into a consumer transaction as a consequence of the defendants' acts or non-disclosure." 502 S.E.2d 799, 805 (Ga. Ct. App. 1998); *see also Zeeman*, 273 S.E.2d at 87 ("[A] claimant who alleges the FBPA was violated as the result of a misrepresentation must demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation."). When confronted with this deficiency, Plaintiff argued that "reliance is not an element of [a] GFBPA claim based on an unjust act." [Doc. 22, at 5]. Plaintiff argues that *Raysoni v. Payless Auto Deals, LLC* supports this proposition

6

but does not explain how. After reviewing the case, the Court finds no basis whatsoever for eliminating the reliance requirement as Plaintiff asks it to do. 766 S.E.2d 24 (Ga. 2014). For the reasons discussed above, the Court finds that the claims against Houston must be dismissed.

II. Daniel's Motion to Dismiss

The Court now turns to Defendant Daniel's Motion to Dismiss for Failure to State a Claim [Doc. 20]. In its motion, Daniel argues that Plaintiff has failed to state a claim against it under both the FDCPA and the GFBPA. In the alternative, Daniel seeks a more definite statement of Plaintiff's claim. For the reasons that follow, the Court grants the motion in part.

*a. FDCPA Claims*

As noted above, Plaintiff asserts claims under the FDCPA for harassment or abuse under § 1692d; misrepresentation under § 1692e; and unfair practices under § 1692f. The Court addresses each of these in turn below.

Daniel first objects to Plaintiff's § 1692d harassment or abuse claim. Section 1692d prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. It then lists six examples of harassing or abusive conduct: use or threat of violence; use of profanity or other obscene language; publication of lists of

consumers refusing to pay debts; advertising the debt as for sale to coerce payment of the debt; and excessive calls or calls without meaningful disclosure of the speaker's identity. *Id.* at (1)-(6).

Daniel argues that Plaintiff failed to state a claim because "[her] Amended Complaint does not state which provision of § 1692d Jack L. Daniel allegedly violates." [Doc. 20-1, at 6-7]. Daniel further argues that "neither a representation as to the owner of the account nor refusing to dismiss a lawsuit" is listed as abusive or harassing in § 1692d. [*Id.* at 7]. This argument incorrectly assumes that the list of harassing and abusive conduct in § 1692d is exhaustive, which it plainly is not. Indeed, the text of § 1692d flatly rejects Daniel's interpretation by stating that the examples outlined in § 1692d were included "without limiting the general application" of the prohibition on harassing and abusive conduct. 15 U.S.C. § 1692d. *See also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985) ("§ 1692d is explicitly not limited to the conduct proscribed by subsections (1)–(6)."); *Meadows v. Franklin Collections Serv., Inc.*, 414 F. App'x 230, 232 (11th Cir. 2011) ("Section 1692d [] provides a non-exhaustive list of prohibited conduct."). At this stage of the proceedings, Plaintiff has alleged sufficient facts that, if proven, would permit a jury to find that Daniel was involved in harassing or abusive conduct towards Plaintiff.

Daniel makes a similar objection to Plaintiff's § 1692e misrepresentation claim. Pursuant to § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e then

provides an extensive—though not exhaustive—list of activities that constitute misrepresentation. 15 U.S.C. § 1692e(1)-(16). Daniel's argues that Plaintiff's Amended Complaint is deficient because it "does not state which provision(s) of § 1692e Jack L. Daniel is alleged to have violated." [Doc. 20-1, at 7]. This contention is legally misguided and factually incorrect. As a legal matter, Plaintiff was not obligated to allege misconduct listed in § 1692e and Daniel unequivocally acknowledges this. [*Id.*] ("[§ 1692e] sets out a list of numerous, albeit *non-exhaustive*, behaviors by debt collectors which constitute false or misleading representations.") (emphasis added). To the extent the list of misconduct in § 1692e is non-exhaustive, Plaintiff was free to allege misrepresentation of any kind without being confined to the list in § 1692e.

As a factual matter, Plaintiff *did* allege specific misrepresentations from § 1692e's list. As Plaintiff notes in her Response to Defendant Jack L. Daniel's Motion to Dismiss [Doc. 25], she alleged in her Amended Complaint [Doc. 15] that Jack L. Daniel "knew that the Defendant Hospital did not own the debt at the time the Suit was commenced" in violation of § 1692e(14).[1] [Doc. 25, at 2; Doc. 15, at ¶ 43]. Plaintiff also argues that this violated § 1692e(2)(a) because proceeding in Houston's name concealed the fact that the debt was in collections. [Doc. 25, at 2-3]. The Court concludes that Plaintiff sufficiently alleged misrepresentation to survive the instant motion.

---

[1] Section 1692e(14) provides that it is a prohibited misrepresentation to use "any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

Finally, Daniel objects to Plaintiff's § 1692f unfair practices claim. Section 1692f prohibits a debt collector from engaging in "unfair or unconscionable means to collect or attempt to collect any debt." As with other provisions of the FDCPA, § 1692f includes a non-exhaustive list of prohibited conduct including limits on the collection amount, communications with the debtor, and the use of postdated checks. 15 U.S.C. § 1692f (1)-(8). Daniel argues that § 1692f only applies to "conduct that is unfair but not specifically [prohibited] in any of the other sections of the FDCPA." [Doc. 20-1, at 9]. In support, it cites *Corson v. Accounts Receivable Management, Inc.*, where the court held that "§ 1692f cannot be the basis for a separate claim for conduct that is already explicitly addressed by other sections of the FDCPA." No. 13–01903 (JEI/AMD), 2013 WL 4047577, at *7 (D.N.J. Aug. 9, 2013) (internal quotations omitted). Relying on this limitation, Daniel argues that Plaintiff's § 1692f claim should be dismissed because Plaintiff "fails to identify any alleged misconduct on the part of Jack L. Daniel other than what she asserts violates other provisions of the FDCPA." [Doc. 20-1, at 10]. In response, Plaintiff argues that Daniel's conduct went beyond mere misrepresentation because Jack L. Daniel attempted to collect an amount that "it now argues it was never authorized to collect" in violation of § 1692f(1). [Doc. 25, at 3].

As a preliminary matter, the Court disagrees with Daniel's view of claims brought under § 1692f. Guided by the Eleventh Circuit's decision in *Miljkovic v. Shafritz and Dinkin P.C.*, the Court finds that Plaintiff could state a claim under § 1692f based on conduct

10

prohibited by another provision of the FDCPA as long as Plaintiff identifies how that conduct was also unfair or unconscionable. 791 F.3d 1291, 1308 (11th Cir. 2015) (recognizing that plaintiff could state a claim under § 1692f if they "identif[ied] how [defendant's] conduct [] was either unfair or unconscionable *in addition to* being abusive, deceptive, or misleading.") (emphasis in original).

This reading of *Miljkovic* is consistent with *LeBlanc v. Unifund CCR Partners* where the Eleventh Circuit allowed a plaintiff to pursue both a § 1692e(5) claim and a § 1692f claim based on the same conduct. 601 F.3d 1185 (11th Cir. 2010). In *LeBlanc*, the plaintiff asserted claims under § 1692e(5) and § 1692f after he received a letter that "purported to be from [the defendant's] legal department." 601 F.3d at 1188. The district court granted partial summary judgment for the plaintiff, concluding that the letter was a threat to take legal action on a debt that it was not authorized to collect in violation of § 1692e(5) and that this was an unfair practice that violated § 1692f. *Id.* at 1189. The Eleventh Circuit remanded on the § 1692e(5) claim on the grounds that there was a question of material fact as to whether the letter was a threat of legal action. *Id.* at 1193. The Eleventh Circuit further concluded that because it found the plaintiff's "§ 1692f claim dependent in part upon his success under § 1692e(5), remand [was] required." *Id.* at 1200. In a footnote, the Court recognized that the § 1692f claim was likely duplicative of the § 1692e(5), but allowed the plaintiff to pursue both theories of liability. *Id.* at 1200 n.31.

Even in the absence of such precedent, the Court would be reluctant to adopt this limit on § 1692f claims because of the lack of textual support in § 1692f for such a limitation. Nothing in § 1692f suggests that it only covers conduct not otherwise dealt with by the FDCPA and *Corson* provides no explanation as to why the Court should read such a limitation into § 1692f.[2] On the other hand, the Eleventh Circuit held in *Miljkovic* that the term "unfair is defined as marked by injustice, partiality, or *deception*." 791 F.3d at 1308 (quoting Merriam Webster's Collegiate Dictionary 1290 (10th ed.1996)) (emphasis added); *see also LeBlanc*, 601 F.3d at 1200 ("Significantly, in *Jeter*, we noted in dictum that in the FTC context, [a]n act or practice is deceptive or unfair ... if it has the tendency or capacity to deceive.") (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.3d 1168, 1172 (11th Cir. 1985)) (alterations in original). In light of these cases, the Court is obligated to treat "unfair" in § 1692f to include practices that are marked by deception meaning § 1692f's prohibitions will inevitably overlap with those of § 1692e. The Court echoes the sentiment from footnote 31 of *Leblanc* that this may lead to duplicative claims, but it is not within the authority of the Court to disallow claims authorized by Congress simply because the Court believes they may be redundant in some circumstances. Nor does the Court have the authority to ignore binding Eleventh Circuit precedent to interpret "unfair" in § 1692f

---

[2] This restriction seems to have originated in *Tsenes v. Transcontinental Credit and Collection Corp.* where the court held that a plaintiff failed to state cause of action because "the Complaint [was] devoid of support for the contention that the defendant engaged in practices that were 'unfair' or 'unconscionable' within the meaning of the section; all the allegations in the Complaint support claims asserted under either §§ 1692g or 1692e." 892 F. Supp. 461, 466 (E.D.N.Y. 1995).

to somehow exclude deceptive conduct. Accordingly, the Court finds that Plaintiff may assert claims under § 1692f for conduct prohibited by other provisions of the FDCPA.

Having clarified what it finds to be the law on this question, the Court concludes that Plaintiff sufficiently alleged unfair conduct in her Amended Complaint so as to survive Daniel's motion to dismiss. Plaintiff alleges that Daniel's conduct went beyond mere misrepresentation because it "expressly sought to collect amounts it now argues it was never authorized to collect." [Doc. 25, at 3]. At this stage of the proceedings, the Court finds that Plaintiff sufficiently identified how Jack L. Daniel's conduct was unfair and deceitful and has therefore stated a plausible claim for unfair practices.

  b. *GFBPA Claim*

The Court now considers Daniel's arguments concerning Plaintiff's GFBPA claim. Daniel argues that the GFBPA does not apply to regulated marketplaces like the debt collection industry and, even if it did, Plaintiff did not allege that she relied on any misrepresentation by Daniel. [Doc. 20-1, at 10-13]. Defendant's first argument is easily dispensed with as Courts routinely apply the GFBPA to debt collectors notwithstanding federal regulation of the debt collection industry. *See, e.g.*, *Gilmore v. Account Mgmt., Inc.*, 357 F. App'x 218, 220 (11th Cir. 2009) (recognizing that a plaintiff could bring a claim against a debt collector under the GFBPA) (citing *1st Nationwide Collection Agency, Inc. v. Werner*, 654 S.E.2d 428 (Ga. Ct. App. 2007)); *Carlisle v. National Commercial Services, Inc.*,

722 F. App'x 864, 869 (11th Cir. 2018) ("[Plaintiff] may recover damages under the GFBPA for [Defendant debt collector's] violations of the FDCA.").

As for Daniel's second argument, it is clear that "a violation of the FDCPA also results in a violation of the GFBPA." *Burns v. Halsted Financial Services, LLC*, NO. 1:15-cv-4287-LMM-JKL, 2016 WL 5417218, at *4 (N.D. Ga. Sept. 14, 2016) (citing *Werner*, 654 S.E.2d at 459); *see also Gilmore*, 357 F. App'x at 220 ("[Debt collector] necessarily violated Georgia's FBPA when it violated the FDCPA."). But, as noted above, violation is just one of three elements that must be alleged for a GFBPA claim to survive a Rule 12(b)(6) motion. "This is so even when the violation of the GFBPA is derived from a violation of the FDCPA and even when the FDCPA does not require demonstration of causation and an injury." *Carlisle v. Nat'l Commercial Servs., Inc.*, NO. 1:14-CV-515-TWT-LTW, 2017 WL 1075088, at *7 (N.D. Ga. Feb. 22, 2017) (citing *Agnew v. Great Atl. & Pac. Tea Co.*, 502 S.E.2d 735, 737 (Ga. Ct. App. 1998) (rejecting argument that plaintiff need not show causation and injury for GFBPA claim when claim arises out of violation of federal statute). As the Court explained above, Plaintiff did not allege that she relied on any misrepresentation that the Defendants made nor does she dispute the argument in her response to the instant motion. Instead, Plaintiff reasserts the argument that the Georgia Court of Appeals rejected in *Agnew*. [Doc. 25, at 3-4]. Because Plaintiff does not allege here or

elsewhere that she relied on and was injured by a violation of the FDCPA, her GFBPA claims against Defendant Jack L. Daniel, Inc. are dismissed.

   c. *Motion for a More Definite Statement*

Finally, Daniel asks the Court to order Plaintiff to submit a more definite statement of her claim. [Doc. 20, at 13]. These motions are disfavored and courts grant them only when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.*, 872 F. Supp. 1353, 1358 (S.D. Fla. 2012). Daniel did not indicate which part of Plaintiff's pleading was "vague or ambiguous" and no such deficiency is readily apparent to the Court. Accordingly, the Court denies Daniel's Motion for a More Definite Statement.

For the reasons stated above, the Court **GRANTS** Houston's Motion to Dismiss for Failure to State a Claim [Doc. 17]. The Court also **GRANTS** Jack L. Daniel Inc.'s Motion to Dismiss [Doc. 20] as to Plaintiff's GFBPA claims but **DENIES** the motion as to Plaintiff's FDCPA claims. Finally, the Court **DENIES** Jack L. Daniel's Motion for a More Definite Statement.

**IT IS SO ORDERED** this 25th day of September, 2018.

> **S/ Tilman E. Self, III**
> **TILMAN E. SELF, III, JUDGE**
> **UNITED STATES DISTRICT COURT**